## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARYBETH MONTERA and MARY JOHNSON on behalf of themselves and all others similarly situated,**<br><br>                              **Plaintiffs,**<br>**v.**<br><br>**A SHOC BEVERAGE, LLC**<br><br>                              **Defendant** | **CASE NO.: 1:24-cv-7281**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Marybeth Montera and Mary Johnson ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against A Shoc Beverage, LLC ("A Shoc" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## **INTRODUCTION**

1.      This is a proposed class action on behalf of a nationwide and New York class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Accelerator Active Energy beverages ("Products" or "Beverages").

 

2.      The Beverages claim to provide sustained energy, accelerate the metabolism and enhance focus. It is marketed to active consumers seeking healthful, clean label products "to enhance their wellbeing."[1]

3.      Among its clean label claims, the side panel of the Beverage assures consumers that the Product contains 0 Carbs, 0 Sugar, 0 Artificial Flavors and **0 Preservatives**.



4.      Contrary to the representation on the Product's label – guaranteeing that it contains "0 Preservatives," the ingredient deck reveals the inclusion of citric acid as the second most prominent ingredient which, as more fully detailed below, is and acts as a chemical preservative in the Product rendering Defendant's representation false, misleading, and in violation of the law.

---

[1] https://www.drinkaccelerator.com/pages/faq.



5.      Defendant knows that consumers are willing to pay more for products that are free of preservatives because they perceive them to be a healthier alternative to similar products that contain chemical preservatives. Indeed, Defendant advertises the Product with the clear intention that consumers rely on the representation made on the packaging that the Product containS "0 Preservatives."

6.      Reasonable consumers such as the Plaintiffs do not have specialized knowledge necessary to identify ingredients in the Product as being inconsistent with Defendant's advertised claim of "0 Preservatives."

7.      By falsely labeling its Product as containing "0 Preservatives," Defendant has profited from consumers' preference for clean label products.

8.      Throughout the applicable class periods, Defendant has falsely represented the true nature of its Product, and as a result of this false and misleading labeling, was able to sell the Product to hundreds of thousands of unsuspecting consumers throughout New York and the United States.

9.     Plaintiffs allege that Defendant's conduct is breach of warranty, violates N.Y. Gen. Bus. Law §§ 349 et seq., N.Y. Gen. Bus. Law §§ 350 et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

10.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Montera is a resident of Bronx, New York, Plaintiff Johnson is a resident of Bayside, New York and Defendant A Shoc Beverage, LLC is Delaware corporation with its principal place of business in Newport Beach, California. The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

11.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendant has received substantial compensation for affected transactions and business activity in this judicial district.

## PARTIES

12.     Plaintiff Marybeth Montera is a resident of Bronx, New York.

13.     Ms. Montera purchased Defendant's Accelerator Active Energy beverages on average twice a week within the past four years from a variety of retail stores located near her residence including CVS, Rite Aid, Target and local bodegas.

14.     Ms. Montera made each of her purchases after reading and relying on Defendant's Product label, specifically the representation that the Product contains "0 Preservatives."

15.     Ms. Montera believed the representations on the Product's label that, among other things, it contained "0 Preservatives."

16.    Ms. Montera believed that Defendant lawfully marketed and sold the Product.

17.    Ms. Montera relied on Defendant's labeling and was misled thereby.

18.    Ms. Montera would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

19.    Ms. Montera was injured in fact and lost money as a result of Defendant's improper conduct.

20.    Plaintiff Mary Johnson is a resident of Bayside, New York.

21.    Ms. Johnson purchased Defendant's Accelerator Active Energy beverages monthly within the past 4 years from retail stores including various Walmart locations near her residence.

22.    Ms. Johnson made each of her purchases after reading and relying on Defendant's Product label, specifically the representation that the Product contains "0 Preservatives.

23.    Ms. Johnson believed the representations on the Product's label that, among other things, it contained "0 Preservatives."

24.    Ms. Johnson believed that Defendant lawfully marketed and sold the Product.

25.    Ms. Johnson relied on Defendant's labeling and was misled thereby.

26.    Ms. Johnson would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

27.    Ms. Johnson was injured in fact and lost money as a result of Defendant's improper conduct.

28.    Plaintiffs and members of the Class have been economically damaged by their purchases of the Products because the advertising for the Products was deceptive and/or misleading under New York laws and the Products are misbranded; therefore, the Products are worth less than what Plaintiff and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

29.    Defendant A Shoc Beverages, LLC. is incorporated in Delaware and headquartered in Newport Beach, California.

-6-

## GENERAL ALLEGATIONS

### A.    Citric Acid is a Preservative

30.    The federal Food Drug & Cosmetic Act  ("FDCA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). "A food to which a chemical preservative(s) is added shall…. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote color retention." 21 C.F.R. §101.22(j).

31.    Chemical preservation is the process of adding ingredients to a food for the purpose of preventing potential damage from oxidation, rancidity, microbial growth, or other undesirable changes. Chemical preservatives may be both natural or synthetic and function one of several ways — (a) as an antimicrobial agent to destroy bacteria or inhibit the growth of mold on foods; (b) as an antioxidant to inhibit oxidation and resulting rancidity; and (3) as a chelating agent which binds metal ions in certain foods to prevent oxidation.

32.    Citric acid is a preservative within the meaning of 21 C.F.R. §101.22. Indeed, in a consumer facing publication, *Food Ingredients and Colors*, the Food and Drug Administration ("FDA") unequivocally identifies "citric acid" as a preservative.[2]

---

[2] *Food Ingredients and Colors*, International Food Information Council Foundation and U.S. Food and Drug Administration, specifically identifies the following as preservatives: ascorbic acid, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E). Available at https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited July 10, 2024).

| Types of Ingredients | What they Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

33.    The sentiment is echoed in the Substances Added to Food database maintained by the FDA, in which the principal technical effects of citric acid are identified as preservative functions. [3] Finally, in a Warning Letter issued to Chiquita Brands International, Inc. and Fresh Express, Incorporated, October 6, 2010, the FDA made clear that citric acid was a preservative and needed to be identified as such.  "The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR §101.22."[4]

34.    Citric acid's primary use is as a preservative, despite potentially having additional functions. [5]  It functions as a preservative in the Product, regardless of Defendant's subjective

[3] The Substances Added to Food Database formerly Everything Added to Foods in the United States, available at https://www.cfsanappsexternal.fda.gov/scripts/fdcc/?set=FoodSubstances&sort=Sortterm_ID&order=ASC&startrow=1&type=basic&search=citric%20acid (last visited July 10, 2024)

[4] http://fda-warning-letters.blogspot.com/2010/10/fresh-express-incorporated-10610.html (last visited July 10, 2024).

[5] *See* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/ (last visited July 10, 2024).

purpose(s) for adding it to the Product, and regardless of any other functions citric acid may perform. This is even more the case here where Defendant has not declared a contrary purpose for adding citric acid.

### B.    Citric Acid Operates as a Preservative in Defendant's Products

35.    Preservatives slow product spoilage caused by mold, air, bacteria, fungi or yeast (antimicrobials) and slow or prevent changes in flavor and delay rancidity (antioxidants). Citric acid acts as a preservative by increasing the acidity of a microbe's environment, making it harder for bacteria and mold to survive and reproduce.

36.    The FDA broadly defines a food additive as any substance added to food. More specifically, the term refers to "any substance the intended use of which results or may reasonably be expected to result — directly or indirectly — in it becoming a component or otherwise affecting the characteristics of any food."[6]  This definition includes any substance used in the production, processing, treatment, packaging, transportation or storage of food. The citric acid identified in the ingredient list of Defendant's Product is not naturally occurring, but rather a chemical preservative specifically added as part of the Product's formulation.

37.    Moreover, citric acid is effective as, and functions as, a preservative in Defendant's Product even when used in relatively low quantities. Thus, even if citric acid is present in the Product at low quantities, Defendant's "0 Preservatives" representation is false, deceptive, and misleading for two independent reasons: (1) it contains added citric acid, which is undeniably a

---

[6] *Understanding How the FDA Regulates Food Additives and GRAS Ingredients,* Current as of 07/06/23. Available at https://www.fda.gov/food/food-additives-and-gras-ingredients-information-consumers/understanding-how-fda-regulates-food-additives-and-gras-ingredients#:~:text=A%20food%20additive%20is%20defined,the%20characteristics%20of%20any%20food (last visited March 12, 2024).

chemical preservative; and (2) it contains citric acid in quantities that are sufficient for it to have a tendency to preserve and otherwise function as a preservative in the Product.[7]

38.    Plaintiffs conducted an independent chemical analysis of Defendant's Beverage to determine the amount of citric acid, as well as the Product's acidity reflected in terms of pH. The analysis unequivocally demonstrates that A Shoc's Product employs a preservation system in which the citric acid functions as a preservative.

39.    Pursuant to 21 CFR § 101.4, manufacturers must list ingredients in descending order of predominance by weight. Citric acid is the second ingredient and the second most prevalent among 19 ingredients that make up the Product. Sodium Citrate is the third most prevalent ingredient.

40.    For a product to be shelf-stable it typically must have a pH value of 4.6 or below. This pH level inhibits the growth of harmful microorganisms, including Clostridium botulinum, which can cause botulism, a serious foodborne illness. The FDA's regulations for acidified foods and low-acid canned foods specify that maintaining a pH at or below this threshold is critical for ensuring the microbial safety of the product during storage and distribution without refrigeration. 21 C.F.R. §110.80 (b)(15).

41.    Testing reveals that Accelerator Peach Paradise has a citric/citrate content of 4.37 mg/1 g of product and a pH value of 3.43. By comparison, it takes only 5 mg of citric acid introduced into 1000 g of water (0.005 mg/1 g) to reduce the solution pH from 7.0 to 4.6.[8] The amount of citric/citrate present in 1 g of the Accelerator product is 874x larger in comparison to 1 g of this standard.

---

[7] *Olmos v. T. Marzetti Co.*, 2022 U.S. Dist. LEXIS 236205 *29 (finding Defendant's argument unpersuasive with respect to Plaintiffs' claims that citric acid always functions as a preservative even if it is at a very low level in the products).

[8] Chemistry 2e, OpenStax, 2019, Ch. 14 Acid-Base Equilibria, p. 711, example 14.12 (Calculating Equilibrium Concentrations in a Weak Acid Solution). Available at https://openstax.org/details/books/chemistry-2e (last visited July 10, 2024).

42.     Accordingly, the concentration of citric acid in the Product is sufficient to lower the pH of the product to the measured value of 3.43 or below, which preserves the Product in a shelf stable, non-refrigerated state. As such, the citric acid, along with the sodium citrate buffer, are acting as a preservative in the Product.[9]

### C.     Consumer Demand For Clean Label Products

43.     The clean label movement has been called "the largest shift in American food habits since World War II."[10] The term encompasses many things but is most often associated with foods that are natural, healthy, and devoid of additives and preservatives.[11]

44.     By representing the Product has "0 Preservatives," Defendant seeks to capitalize on consumer preference for clean label products. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health."[12] "84 percent of Americans buy "free-from" foods because they believe them to be more natural or less processed." Among such consumers, the claim '0 Preservatives' ranks "[a]mong the top claims… deem[ed] most important." *Id.*

45.     In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products. Results indicated

---

[9] Sodium citrate is also a preservative and acts as such in the Product. It acts as a buffering agent or acidity regulator, resisting changes in pH. This property can help preserve food by maintaining a stable pH level. https://en.wikipedia.org/wiki/Trisodium_citrate.

[10] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited July 10, 2024).

[11] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited July 10, 2024).

[12] *See, Free-from Food Trends US 2015 Report,* MINTEL, Available at https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last visited July 10, 2024).

the most popular claim to be "no artificial ingredients" followed closely by a claim that a product contained "0 Preservatives.[13]



Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)

Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

46.     By failing to properly label its Product, Defendant has misled and deceived consumers in violation of the laws pled herein.

47.     As a result of Defendant's unlawful and deceptive conduct, Plaintiffs and members of the Class have been harmed.

## ECONOMIC INJURY

48.     Plaintiffs sought to buy Products that were lawfully labeled, marketed, and sold.

49.     Plaintiffs saw and relied on Defendant's misleading labeling of its Products.

50.     A Shoc guaranteed, and Plaintiffs believed that the purchased Products contained "0 Preservatives."

51.     Plaintiffs believed that the Products were lawfully marketed and sold.

52.     In reliance on the claims made by Defendant regarding the qualities of their Products, Plaintiffs paid a price premium.

---

[13] L.E.K. Consulting, *How the Clean-Label Megatrend Is Changing the Food Ingredients Landscape*, Vol XXI, Issue 74, November 18, 2019. Available at https://www.lek.com/insights/ei/clean-label-food-ingredients (last visited July 10, 2024).

53.    The average retail price of Defendant's Product is generally between $2.19 and $2.59 per can.[14] It retails for $2.08 per can on its own website.[15] By comparison, the average retail price among some of Defendant's most significant competitors that similarly contain citric acid but do not make a "no preservative" claim is $1.70, representing an average price premium of $0.38 per unit.

---

[14] https://www.google.com/search?q=ashoc+accelerator+drink+16+ounces&sca_esv=1556bdbe4d8 09509&sca_upv=1&rlz=1C1SQJL_enUS912US912&sxsrf=ADLYWIKSWgbCDISWJEW8OY 5lLRTkqHeuKw%3A1727218841345&ei=mUTzZpnTFPGq5NoP7vHekQU&ved=0ahUKEwjZ g_PL19yIAxVxFVkFHe64N1IQ4dUDCBA&uact=5&oq=ashoc+accelerator+drink+16+ounces &gs_lp=Egxnd3Mtd2l6LXNlcnAiIWFzaG9jIGFjY2VsZXJhdG9yIGRyaW5rIDE2IG91bmNlzI FECEYoAEyBRAhGKABMgUQIRigATIFECEYoAEyBRAhGKABMgUQIRirAjIFECEYqwI yBRAhGKsCSPweUJ0GWOQdcAF4AZABAJgBZ6AB2AaqAQM5LjG4AQPIAQD4AQGYA gugAvUGwgIKEAAYsAMY1gQYR8ICBhAAGBYYHsICCxAAGIAEGIYDGIoFwgIIEAAYg AQYogTCAgUQIRifBZgDAIgGAZAGCJIHBDEwLjGgB-JF&sclient=gws-wiz-serp#oshopproduct=gid:18109763718309975543,mid:576462790886586467,oid:549529866215 1059153,iid:12271485729539260938,rds:UENfMTgxMDk3NjM3MTgzMDk5NzU1NDN8UFJ PRF9QQ18xODEwOTc2MzcxODMwOTk3NTU0Mw%3D%3D,pvt:hg,pvo:3&oshop=apv&pvs =0&cso=jsuid_352:498.3999938964844

[15] https://www.drinkaccelerator.com/collections/shop (last visited September 25, 2024)

-13-

| PRODUCT | RETAIL PRICE |
|---|---|
| C4[16] | $1.88 |
| Celsius[17] | $1.58 |
| Rockstar[18] | $1.87 |
| Monster[19] | $1.58 |
| Prime[20] | $1.58 |
| **Average Price** | **$1.70** |

---

[16] https://www.amazon.com/Variety-Performance-Artificial-Substitute-Alternative/dp/B09ZMYS17B/ref=sr_1_6_pp?crid=1VYZCKAHOXBVG&dib=eyJ2IjoiMSJ9.MrD9eUXqmMkBO-FGEzXF8RFbu60YUuuOfTbypE59Rj9BEGfrslt65iA0jIEhPHN-7Y0r_7EYiWU32ymML3RibjymUSDJRPTc1Q3MjORpC5NGgJnUYyeTrxa_YrQ6OUQLGumQc9fI6B-_mPmZmOvpMst-PAZP9bqK0lOrcbdyBkCsu0pnaeG63sNp8N9M0SCOnI5w-q263Nc4Cluinf7XwTpwxT7mq-Bk1bljCbu86Fw8nYAwqgOjDoLEOdOd9vMxC_Oen_X03jCsPs-FNNwc5Thyvm4yR9e379igqBe6Rzk.W1OKtpZuMgo_IpBaWRR679sFOZ4w6DzfO19G3DoxwFs&dib_tag=se&keywords=energy+drinks&qid=1727296436&rdc=1&sprefix=energy+drinks%2Caps%2C191&sr=8-6 (last visited September 25, 2024).

[17] https://www.amazon.com/CELSIUS-Fitness-Energy-Standard-Variety/dp/B06X6J5266/ref=zg_bs_g_16318341_d_sccl_1/144-8675376-5693754?psc=1 (last visited September 25, 2024).

[18] https://www.amazon.com/Rockstar-Energy-Drink-Caffeine-Packaging/dp/B09DTBF2VM/ref=zg_bs_g_16318341_d_sccl_13/144-8675376-5693754?th=1 (last visited September 25, 2024).

[19] https://www.amazon.com/Monster-Energy-Variety-Pipeline-Pacific/dp/B0CGMF1J8Z/ref=zg_bs_g_16318341_d_sccl_15/144-8675376-5693754?psc=1 (last visited September 25, 2024).

[20] https://www.amazon.com/PRIME-Preworkout-Caffeine-Electrolytes-Hydration/dp/B0BRDFY7DG/ref=zg_bs_g_16318341_d_sccl_39/144-8675376-5693754?th=1 (last visited September 25, 2024).

54.    As a result of their reliance on Defendant's misrepresentations, Plaintiffs received Products that contained ingredients which they reasonably believed they did not contain.

55.    Plaintiffs received Products that were unlawfully marketed and sold.

56.    Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

57.    Defendant knows that the claim "0 Preservatives" is material to a consumer's purchasing decision.

58.    Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

59.    By engaging in the false and deceptive conduct alleged herein, Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

60.    Plaintiffs, however, would be willing to purchase products labeled as "0 Preservatives" again in the future, including Defendant's Product, should they be able to rely with any confidence on Defendant's marketing as truthful and not deceptive.

61.    However, Plaintiffs will not be able to purchase Defendant's Product in the future, even though Plaintiffs would like to, since simply viewing the ingredient list on Defendant's Product that displays the wording "0 Preservatives" on the  label may not be enough to prevent Plaintiffs from being deceived by Defendant's Product since it will not afford Plaintiff the opportunity to quickly and easily view the ingredient list before purchasing the Product to determine whether any of the ingredients in the Product are preservatives, especially because Plaintiffs, as reasonable consumers, do not have the scientific or encyclopedic knowledge to view all the ingredients identified on the ingredient list to determine whether a  particular ingredient is a preservative much less that if it tends to preserve and/or has a preservative effect.

## CLASS ACTION ALLEGATIONS

62.    Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

a.  **National:** All persons in the United States who purchased Class Products in the United States during the Class Period.

b.  **New York:** All persons in New York who purchased the Class Products in New York during the Class Period;

c.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.[21]

63.    Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

64.    Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

65.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

66.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

67.    Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a.    Whether Defendant marketed, packaged, or sold the Class Products to Plaintiffs and those similarly situated using false, misleading, or deceptive statements or representations;

b.    Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;

---

[21] The statute of limitations for Plaintiffs' claims under N.Y. Gen. Bus U. Law § 349 et seq., N.Y. Gen. Bus. Law § 350 et seq., and for unjust enrichment is 3 years. Accordingly for these claims the Class Period begins 3 years from the date of the initial filing to the present. Plaintiffs' claims for breach of express warranty have a statute of limitations of 4 years. Accordingly the Class Period for these claims begins four years from the date of the initial filing to the present.

c.     Whether Defendant participated in and pursued the common course of conduct complained of herein;

d.     Whether Defendant has been unjustly enriched as a result of their unlawful business practices;

e.     Whether Defendant's actions violate N.Y. Gen. Bus. Law § 349 et seq;

f.     Whether Defendant's actions violate N.Y. Gen. Bus. Law § 350 et seq;

g.     Whether Defendant's actions constitute breach of express warranty;

h.     Whether Defendant should be enjoined from continuing the above-described practices;

i.     Whether Plaintiff and members of the Class are entitled to declaratory relief; and

j.     Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

68.     Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs are consumers who purchased Defendant's Product. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

69.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

70.     A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the

wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

71.     In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

72.     The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## **CAUSES OF ACTION**

## **FIRST CAUSE OF ACTION**
### **Violation of Breach of Express Warranty**

73.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

74.     Plaintiffs' express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607. Defendant was afforded reasonable notice of this claim in advance of the filing of this complaint.

75.     Defendant made express warranties to Plaintiffs and members of the Class that the Products they purchased contained 0 Preservatives.

76.     The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

77.     Plaintiffs and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

78.     Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

79.     Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff sand members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

80.     Plaintiffs and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law N.Y. GEN. BUS. LAW § 349 *et seq.*)**

81.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein. Plaintiffs bring this claim on behalf of the New York class for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq*

82.     Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 349(a).

83.    A Shoc's labeling and marketing of its Product, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff Johnson  and the New York class as to the characteristics and value of the Products.

84.    Subsection (h) of Section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Gen. Bus. Law § 349(h).

85.    In accordance with subsection (h) of Section 349, Plaintiffs seeks an order enjoining A Shoc from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful deceptive acts and practices, A Shoc will continue its deceptive and misleading marketing campaign and, in doing so, irreparably harm each of the New York Subclass members. As a consequence of AShoc's deceptive acts and practices, Plaintiffs and other members of the New York class suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiffs and other members of the New York class also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

## THIRD CAUSE OF ACTION

### (Violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350 *et seq.*)

86.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein. Plaintiffs bring this claim on behalf of the New York class for violation of

section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 350.

87.    Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 350.

88.    New York General Business Law Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." *Id.*

89.    A Shoc's labeling, marketing, and advertising of its Beverages, as alleged herein, are "misleading in a material respect" and, thus, constitute "false advertising," as they falsely represent the Products as consisting of characteristics and lawfulness that they do not possess.

90.    Plaintiffs seek an order enjoining A Shoc from continuing this false advertising. Absent enjoining this false advertising, A Shoc will continue to mislead Plaintiffs and the other members of the New York class as to the characteristics of their Products, and in doing so, irreparably harm each of the New York Subclass members.

91.    As a direct and proximate result of A Shoc's violation of New York General Business Law §350, Plaintiffs and the other members of the New York Subclass have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiffs and other members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 350-e.

## FOURTH CAUSE OF ACTION
### Restitution Based On Quasi-Contract/Unjust Enrichment

92.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

93.    Plaintiffs plead this cause of action in the alternative.

94.    Defendant's conduct in enticing Plaintiffs and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

95.     Defendant took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class.  It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and Class members.

96.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.


## PRAYER FOR RELIEF

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:


A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B.      Restitution in such amount that Plaintiffs and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.      Compensatory damages for Causes of Action for which they are available.

D.      Statutory penalties for Causes of Action for which they are available.

E.      Punitive Damages for Causes of Action for which they are available.

F.      A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G.      An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.      An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.      Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: September 26, 2024                    Respectfully submitted,


Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone:  (401) 831-7730
Facsimile:  (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiffs*